**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff/Respondent,<br><br>   vs.<br><br>STEVEN WILLIAM CARPENTER,<br><br>       Defendant/Movant. | CR 12-65-GF-BMM<br>CV 16-77-GF-BMM<br><br><br>**ORDER** |

This case comes before the Court on Defendant/Movant Steven William

Carpenter's motion to vacate, set aside, or correct his sentence, pursuant to 28

U.S.C. § 2255. Carpenter is a federal prisoner proceeding pro se.

The Court denied some of Carpenter's claims for lack of merit on December

16, 2016. The United States filed an answer on two claims on February 3, 2017.

Carpenter filed a reply and, three weeks later, a supplement to the reply.

# I. Background

The prosecution in this case centered on a scheme to obtain money from investors for a non-existent oil and gas development project on the Fort Peck Indian Reservation. The reservation is near enough to the Bakken oil formation to use the word as bait for investors, but not quite near enough actually to tap the Bakken. Carpenter worked with co-defendant Mike Alfons Campa (also known as Mike Heretel), who was acknowledged by all to be the leader of the group. Campa's wife Suzette Gal, her sons Andras and Krisztian Gal, and Carpenter's girlfriend, Dana Yvonne Kent, also participated in the scheme.

A grand jury indicted the six defendants on one count of conspiracy to commit investment fraud by wire and mail, a violation of 18 U.S.C. § 371 (Count 1); one count of wire fraud, a violation of 18 U.S.C. § 1343 (Count 2); and one count of mail fraud, a violation of 18 U.S.C. § 1341 (Count 3). *See* Indictment (Doc. 19) at 2-3. Count 1 carried a five-year maximum prison sentence. Counts 2 and 3 carried 20-year maximum sentences.

Campa pled guilty to all counts without a plea agreement on April 22, 2013. The Court held a final pretrial conference as to Carpenter and the Gal defendants. Kent pled guilty and had no involvement in the remainder of the case. Trial commenced on April 23, 2013. Campa testified for the Gal defendants.

Campa blamed himself and Carpenter for the entire scheme. Carpenter also

testified. After six days of testimony by more than 25 witnesses, the jury deliberated for two hours and fifteen minutes. The jury convicted Carpenter and Suzette and Andras Gal on all counts. The jury convicted Krisztian Gal on Count 1 and acquitted him on Counts 2 and 3. Krisztian Gal's conviction on Count 1 was later vacated for insufficient evidence. He pled guilty to a similar charge in a different case.

A presentence report was prepared. Starting from a base offense level of 7, Carpenter received a 14-level enhancement because the loss exceeded $400,000; a four-level enhancement for 50 or more victims; and three two-level enhancements for sophisticated means, vulnerable victims, and leading role. Presentence Report ¶¶ 43-48. The total adjusted offense level was 31. With a criminal history category of IV, Carpenter's advisory guideline range was 151 to 188 months. *Id.* ¶¶ 61, 115.

The Court sentenced Carpenter to serve 60 months on Count 1, 62 months on Count 2, and 66 months on Count 3, with all three terms to run consecutively, followed by a three-year term of supervised release. The Court also ordered Carpenter to pay $675,406.62 in restitution, jointly and severally, with Campa and the Gal defendants. *See* Judgment (Doc. 413) at 2-6.

Carpenter appealed. As relevant here, he argued that venue was not proper in Montana. The Ninth Circuit rejected all of his arguments and affirmed his

convictions on March 27, 2015.  *See* Mem. (Doc. 589) at 1-18, *United States v. Carpenter*, No. 13-30241 (9th Cir. Mar. 27, 2015).

## II.  Remaining Claims and Analysis

Both of Carpenter's remaining claims allege that his trial counsel provided ineffective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984) governs claims for ineffective assistance of counsel.  At this stage of the proceedings, Carpenter must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that a reasonable probability exists that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

The Court directed the United States to answer the remaining claims.  The Court warned the United States that it could not discuss the case with Carpenter's trial counsel.  The Court instead required the United States to "respond to the allegations on the merits based on the information currently available to the United States."  Order (Doc. 646) at 14-15 ¶ 3.  The United States requests no evidentiary hearing and asserts that the case should be decided on the existing record because Carpenter's claims are "palpably incredible or patently frivolous."  *See* Answer (Doc. 654) at 2, 10, 11.

### A.  Venue

Carpenter alleges that his trial counsel failed to make a motion regarding improper venue before trial thereby waiving the issue for future review. Carpenter asserts that counsel's "lack of investigation and preparation for trial certainly must have been a factor in the oversight." Carpenter claims that "the evidence . . . revealed during trial, there were no ties to the district of Montana for counts 2 or 3 of the indictment regarding Carpenter." Mem. in Supp. of § 2255 Mot. (Doc. 636) at 21-22.

### 1. Arguments in the Answer

As the Order of December 16, 2016, explained, Carpenter's claim that "there were no ties to the district of Montana for counts 2 or 3" proves incorrect. The Ninth Circuit determined that sufficient evidence supported venue on Counts 2 and 3. *See* Order (Doc. 646) at 11. The United States's answer goes too far in asserting that this determination means "[n]othing more is required." Answer (Doc. 654) at 5-6.

Carpenter raised venue for the first time on appeal and also asserted that trial counsel provided ineffective assistance of counsel for failing to object to venue. The Ninth Circuit determined that Carpenter had waived the issue. As a result, the Ninth Circuit applied plain error review.

The Ninth Circuit concluded that the United States had presented sufficient evidence of venue to support Carpenter's convictions on Counts 2 and 3. The

Ninth Circuit conceded that the record created at trial did not enable it to decide whether counsel had provided ineffective assistance of counsel. *See* Mem. (Doc. 589) at 4-5, *Carpenter*, No. 13-30246. The Ninth Circuit did not resolve Carpenter's ineffective assistance of counsel claim. The Ninth Circuit's determination that sufficient evidence existed to support venue in Montana on Counts 2 and 3 under the plain error review does not control disposition of Carpenter's ineffective assistance of counsel claim.

The United States's answer also avers that the indictment adequately established venue in Montana when it alleged that each offense took place "at Poplar, in the State and District of Montana." Answer at 4-5. An indictment need only contain a bare-bones allegation of proper venue. An indictment nonetheless must allege something that, assuming to be true, makes venue proper.

In *United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997), for instance, the indictment alleged that "within the Western District of Washington," the defendants "knowingly and intentionally did possess and aid and abet the possession of, with intent to distribute, cocaine." This allegation proved sufficient to establish venue "*because* the crime of drug possession with intent to distribute, or aiding and abetting such possession, *occurs where the principal commits it*." *Id.* (emphases added). The mere recitation of the phrase "within the Western District of Washington" did not satisfy venue. The additional allegation that the

defendants *possessed cocaine in* Western Washington, intending to distribute it, established proper venue for trial.

Similarly, in *Rodd v. United States*, 165 F.2d 54 (9th Cir. 1947), *cited in Carbo v. United States*, 314 F.2d 718, 733 n.13 (9th Cir. 1983), *quoted in* Answer at 5, the equivalent of the phrase the United States here relies on—"at Poplar, in the State and District of Montana"—was missing from the first count of the indictment. *See Rodd*, 165 F.2d at 55. Nonetheless, Count 1 alleged that an obscene book had been "deposited with a common carrier . . . for carriage from Brooklyn, State of New York, to San Diego . . . within the Southern Division of the Southern District of California." *Id.*

For these reasons, the government's answer does not show that a motion to dismiss would have been denied. The government asks the Court to decide Carpenter's claims on the existing record. The government has elected to forego an evidentiary hearing or an opportunity to conduct discovery to determine whether counsel possessed a reasonable strategic basis for not objecting to venue. The Court will decide Carpenter's claim on the existing record.

### 2. Merits of the Claim

"Proper venue is not a mere technicality," because "a defendant in a criminal case has a constitutional right to be tried in a district where the crime was committed." *United States v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012)

7

(quoting U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18). "If a defect in venue is clear on the face of the indictment, a defendant's objection must be raised before the government has completed its case." *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1060 & n.1 (9th Cir. 2000) (noting that, where the indictment does not show proper venue, the court should transfer the case if the defendant so requests or else dismiss the indictment). The court may not consider potential evidence, however, in deciding a pretrial motion to dismiss for improper venue. The Court must take as true allegations of the indictment. *See United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997); *United States v. Jensen*, 95 F.3d 667, 669 (9th Cir. 1996); Fed. R. Crim. P. 12(b)(3)(A) (formerly 12(b)(2)).

The venue analysis changes once the case proceeds to trial. Venue presents "a question of fact that the government must prove by a preponderance of the evidence." *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012). Thus, in a jury trial it would be "for the jury, not the court" to determine whether venue exists. *Id.* "Where a rational jury could not fail to conclude that a preponderance of the evidence establishes venue, then a court is justified in determining venue as a matter of law." *Id.* A court also may enter a judgment of acquittal under Rule 29 if no reasonable juror could find facts to support venue. *See Ruelas-Arreguin*, 219 F.3d at 1060; Fed. R. Crim. P. 29(a).

Venue must be proper for each count "[w]hen a defendant has been indicted on multiple counts." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). As a result, the government's efforts to establish proper venue for conspiracy does not necessarily establish proper venue for a substantive offense, even if the substantive offense constitutes an overt act in furtherance of the conspiracy. *See, e.g.*, *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994) (rejecting argument that "the *Pinkerton* principle" applies to venue).

The Court must determine whether the District of Montana represents a proper venue for each count based on the language of the Indictment. The Court must identify whether the Indictment alleges conduct that constitutes each offense alleged and discern whether that conduct occurred "in the State and District of Montana." *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999); *United States v. Cabrales*, 524 U.S. 1, 5-6 (1998).

### a. Count 1

Count 1 of the indictment alleged a conspiracy to violate the laws of the United States, in violation of 18 U.S.C. § 371, by using mail and wire facilities to dupe investors and obtain money from them. A proper venue for a violation of § 371 would be in a district where the conspiracy was formed, or where a person performed an overt act in furtherance of the conspiracy. *See United States v. Ahumada-Avalos*, 875 F.2d 681, 682-83 (9th Cir. 1989) (per curiam).

The Ninth Circuit determined venue proper in a drug conspiracy case in a federal district where a non-conspirator informant participated in telephone calls to negotiate sales with a conspirator. *See United States v. Gonzalez*, 683 F.3d 1221, 1225 (9th Cir. 2012). In a case involving conspiracy to launder money, the First Circuit recently explained "the central objective . . . is to conceal or disguise," so that "an action taken by a conspirator to facilitate the concealment aim of the money laundering transactions is an overt act in furtherance of such a conspiracy." *United States v. Georgiadis*, 819 F.3d 4, 11 (1st Cir. 2016) (internal quotation marks, brackets, and citation omitted).

Likewise, the central objective of a conspiracy to commit wire or mail fraud is to use the wires or mails to perpetrate a fraud. As a result, a conspirator's use of wires or mails to carry out the fraud constitutes an overt act in furtherance of the conspiracy. The Indictment alleged that Defendant Suzette Gal, a member of the conspiracy, *see* Indictment (Doc. 19) at 3-4 ¶ 6, sent a fax to the Superintendent of the Fort Peck Agency, *see id.* at 2-3 ¶¶ 1-2, 6 ¶ 2, and signed for a letter sent by the Superintendent of the Fort Peck Agency to Yorba Linda, California, *see id.* ¶ 3. The allegations of the Indictment also support an inference that the fax furthered the conspiracy by making it possible to send "Fort Peck documents" to potential investors. *See id.* at 7 ¶ 6, 10 ¶ 11; *see also United States v. Lane*, 474 U.S. 438, 451-52 (1986) (describing "lulling" communications).

The other ten overt acts alleged in the Indictment contain no connection to Montana other than false representations that the defendants were engaged in an oil and gas development project in Montana. One overt act in Montana suffices. The indictment established Montana as a proper venue for trial of Count 1. Carpenter contests his membership in the conspiracy and the dates of his involvement. The true facts of Carpenter's involvement prove irrelevant in this context, however, as the Court must judge venue for pre-trial purposes on the face of the indictment. As the evidence supporting Carpenter's conviction was also sufficient, his venue claim is denied as to Count 1.

### b. Count 2

Count 2 alleged wire fraud in violation of 18 U.S.C. § 1343. Venue "is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was 'orchestrated.'" *Pace*, 314 F.3d at 349-50. In other words, "where there is a direct or causal connection to the misuse of wires. *Id*. Count 2 alleged in part:

> [F]or the purpose of executing [their] scheme and artifice . . . the defendants made and caused to be made telephone calls to the Bureau of Indian Affairs in Poplar, in the State and District of Montana, from Yorba Linda, and other places, in the State of California, and thereafter wire transfers of funds from the States of Hawaii, Mississippi, Nebraska, New York, Arizona, and others, to Yorba Linda, in the State of California, in violation of 18 U.S.C. § 1343.

Indictment at 13. Count 2 alleges no funds transferred by wire to, from, or through

Montana.

The indictment alleged, however, that the defendants used wires running from Yorba Linda, California, to Poplar, Montana, to carry out their fraudulent scheme. A crime that consists of distinct parts, such as presented here, "may be tried where any part can be proved to have been done." *Rodriguez-Moreno*, 526 U.S. at 281 (internal quotation marks and citation omitted). The government established Montana as a proper venue for trial of Count 2.

In addition, the United States produced evidence from which a reasonable juror could have found, beyond reasonable doubt, that Carpenter personally called Anna Eder in Montana. *See* 1 Trial Tr. (Doc. 466) at 98:13-16, 99:9-22; 2 Trial Tr. (Doc. 467) at 48:25-49:22.

Carpenter's venue claim is denied as to Count 2.

### c. Count 3

Count 3 alleged mail fraud in violation of 18 U.S.C. § 1341. Venue would be proper for "[a]ny offense involving the use of the mails" in "any district from, through, or into which such . . . mail matter . . . moves." 18 U.S.C. § 3237(a); *see also, e.g.*, *United States v. Ramirez*, 420 F.3d 134, 143-48 & n.10 (2d Cir. 2005) (referring to *Pace*, 314 F.3d at 349).

The Second Circuit recognizes that a party commits mail fraud "by the particular acts of depositing or receiving mail, or causing it to be delivered." *See*

*United States v. Brennan*, 183 F.3d 139, 146-49 (2d Cir. 1999). The Second Circuit deems mail fraud complete when a party deposits mail, receives mail, or causes mail to be be delivered with the intent to perpetrate a fraud. *Id.* Each mailing in perpetration of a fraud constitutes a separate crime. *Id.,* (citing Supreme Court's "restrictive construction of venue provisions" in *Johnson v. United States*, 323 U.S. 273 (1944)). As a result, the Second Circuit in *Brennan* declined to apply the expansive "moves through" provision of § 3237(a) to mail fraud. *Brennan* reversed a mail fraud conviction in the Eastern District of New York based on improper venue where the evidence at trial indicated that the mail at issue merely "passed through" LaGuardia or JFK airports, located in the Eastern District of New York, on its way to its target in the Southern District of New York. *Brennan*, 183 F.3d at 149.

Carpenter's claim fails even if the Court were to apply a similarly restrictive view of venue for the mail fraud statute. The Second Circuit requires two elements in order for a mailing to qualify as a jurisdictional. The government must prove to the jury that (1) the defendant knowingly caused the mailing, or knowingly caused mail to be delivered by commercial interstate carrier according to the direction on the mailing, and (2) the mailing was in furtherance of the scheme. 18 U.S.C. § 1341; *United States v. Altman*, 48 F.3d 96, 102-03 (2d Cir. 1995).

Count 3 of the Indictment alleged, in part, that "the defendants . . .

13

knowingly caused to be delivered by mail and by private and commercial interstate carrier according to the direction thereon, checks and other monetary instruments representing investment in the scheme . . . [f]rom on or about June 13, 2006, through on or about August 24, 2012, at Poplar, in the State and District of Montana, and elsewhere." Indictment (Doc. 19) at 14-15. The Indictment contends that the Defendants took these actions "for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive." *Id.* The Indictment further alleged that these actions violated the mail fraud statute set forth at 18 U.S.C. § 1341. *Id.*; *see also* Jury Instrs. (Doc. 297) at 24.

The Indictment, on its face, alleged that Defendants "caused to be delivered" to the District of Montana, checks and other monetary instruments that represented an investment in the scheme. These allegations satisfy the two elements required by the Second Circuit's more restrictive test for proper venue. *See Altman*, 48 F.3d at 102-03. The Indictment established the District of Montana as a proper venue for the mail fraud charge in Count 3. The existing record demonstrates that Carpenter's counsel did not provide ineffective assistance of counsel by failing to raise a pre-trial motion to challenge venue in the District of Montana.

Counsel could have preserved the venue issue for appeal by making a Rule 29 motion. To convict Carpenter of the substantive offense of mail fraud, the

United States had to prove that he participated in the scheme and also that he either personally used or caused the mails to be used, or that he aided and abetted someone else's use of or direction to use the mails. *See* Jury Instrs. (Doc. 297) at 29 (requiring proof the defendant aided and abetted each element of the offense). The government's evidence at trial established that Defendants caused to be delivered to the District of Montana the fraudulent business agreement between U.S. Oil and Gas and the BIA. The Ninth Circuit determined that the government satisfied the venue requirement when it presented evidence at trial "that U.S. Oil and Gas sent to the Fort Peck Agency of the Bureau of Indian Affairs ("BIA") in Montana" a proposed business agreement that Carpenter later mailed to potential investors. Mem. (Doc. 589) at 4, *United States v. Carpenter*, No. 13-30241 (9th Cir. Mar. 27, 2015).

Carpenter testified at trial that co-defendant Campa created the letter and mailed it to Montana. (Doc. 471) at 216. It proves immaterial to satisfy the first element that a third-party, rather than Carpenter, "wrote and sent the letter at issue." *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989). The Supreme Court likewise has made clear that the mailing, even a "routine" and "innocent" one by a third-party, may qualify to establish the second element regardless of whether the mailing took place before or after the victim had tranferred the defrauded funds. *Schmuck v. United States*, 489 U.S. 705, 712-15. The focus

should fall on whether the mailing helped to ensure that the victims maintained "faith" in the perpetrators of the ongoing fraud. *Id.* Here the mailing to Montana served as a set-up for the emails that Carpenter himself sent to potential investors. The purported agreement between U.S. Oil and Gas and the Fort Peck Tribe regarding the illusory oil refinery furthered the fraud scheme by "lulling the victims" into believing that the refinery actually existed. *United States v. Slevin*, 106 F.3d 1086, 1089-90 (2d Cir. 1996).

More importantly, the Indictment stated that the Defendants "knowingly caused to be delivered by mail and by private and commercial interstate carrier according to the direction thereon" items representing investment in this fraudulent scheme. Indictment (Doc. 19) at 14-15. Congress intended to make the mail fraud statute more effective by allowing the government to deal with the wrongful use of the mail "in the district of delivery as well as in that of deposit." *Salinger v. Loisel*, 265 U.S. 224, 234 (1924). And if the mailing gets delivered "according to the address the person who causes the mailing causes the delivery." *Id.; see also United States v. Ramirez*, 420 F.3d 134, 147 n.12 (2d Cir. 2005) (noting that "the addition of the 'knowingly causes to be delivered' clause was an express attempt by Congress to expand the proper venue for mail fraud").

Finally, even if the Court had denied both the pretrial and Rule 29 motions, counsel could have requested a jury instruction on venue. Carpenter denied that he

sent the fraudulent U.S. Oil and Gas business agreement to the District of Montana.

Carpenter testified that co-defendant Campa had sent it. *See* 5 Trial Tr. (Doc. 471)

at 219:9-22. As noted previously, however, whether Carpenter or Campa sent the

U.S. Oil and Gas business agreement to the District of Montana proves irrelevant

for purposes of venue analysis. *See Bortnovsky*, 879 F.2d at 36. The fraudulent

U.S. Oil and Gas business agreement, Government Exhibit 10, provided sufficient

evidence to support venue on Count 3. *Slevin*, 106 F.3d at 1089-90. Carpenter

has failed to establish, on the existing record, that the jury might have found that

the evidence proved insufficient to establish that Carpenter caused any mail to be

delivered to the District of Montana if the Court had instructed it to make this

specific determination.

As a final note, no fatal variance existed between the evidence offered at

trial and the Indictment for purposes of venue analysis. A variance "occurs when

the charging terms of the indictment are left unaltered, but the evidence offered at

trial proves facts materially different from those alleged in the indictment." *United

States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984) (*quoting United States v.

Cusmano*, 659 F.2d 714, 718 (6th Cir.1981)). The mail fraud count of the

Indictment referred to"checks and other monetary instruments" that Carpenter

knowingly caused to be delivered to the District of Montana.

The government presented evidence at trial that Carpenter and his co-

defendants caused to be delivered in the District of Montana the fraudulent U.S.

Oil and Gas business agreement. The government presented further evidence that

Carpenter and his co-defendants attached the fraudulent U.S. Oil and Gas business

agreement to emails to potential investors in an effort to assure investors of the

legitimacy of the scheme. Carpenter suffered no substantial prejudice as the jury

instructions explained that the fraudulent investment scheme underlying the mail

fraud count revolved around efforts by Carpenter and his co-defendants to "solicit

and receive monies and funds based on the fraudulent representations that the

payments represented an investment in an oil and gas development project on the

Fort Peck Indian Reservation in northeast Montana." *Cf. United States v.*

*Tsinhnahijinnie*, 112 F.3d 988, 989-91 (9th Cir.1997).

The Ninth Circuit determined in *Tsinhnahijinnie* that the defendant's rights

had been prejudiced by a variance between language in indictment and the

evidence presented at trial. The indictment alleged abusive sexual contact with a

minor over a two-month period within the confines of an Indian reservation. *Id.*

The trial testimony suggested, however, that defendant had perpetrated the sexual

abuse over a significantly different period of time at locations both on and off the

reservation. *Id.* Federal jurisdiction hinged on the fact that the alleged abusive

sexual contact had taken place on the reservation. *Id.* Unlike *Tsinhnahijinnie*, both

the Indictment and the trial testimony supported the delivery of materials through

18

the mail to the District of Montana.

The court in *United States v. Walker*, 2017 WL 3438763 (E.D. Cal. 2017), likewise rejected a claim of ineffective assistance of counsel for failing to raise the issue of a fatal variance. The indictment alleged in general language a connection between the activities of a gang to which the defendant belonged and interstate commerce. The government introduced at trial evidence about the gang's use of firearms to show a nexus to interstate commerce. *Id.* at \*36. The court determined that the evidence of gang's use of the guns did not differ "materially" from the general allegations contained in the indictment. *Id.* The court noted that none of the defendants objected or showed any surprise during trial when this evidence was discussed or introduced. *Id.* The court concluded that no reasonable possibility existed that the defendant had been convicted of an offense other than that charged in the indictment simply because the government introduced evidence of gun use in order to support the element of interstate commerce. *Id.*

No reasonable probability exists that Carpenter was convicted of an offense other than that charged in the Indictment as the business agreement did not differ "materially" from the items discussed in the Indictment. These documents furthered the alleged scheme. Carpenter made no objection and showed no surprise when the government introduced the phony business agreement between U.S. Oil and Gas and the Fort Peck Tribe. *Walker*, at \*36. In fact, the government

asked Carpenter about having mailed the agreement on cross-examination. Carpenter blamed Campa and Campa, in turn, blamed Carpenter for having mailed the phony document. As a result, Carpenter suffered no prejudice from his counsel's failure to raise venue in a pre-trial motion, failure to raise venue in a Rule 29 motion at the close of the government's case, or failure to ask for a jury instruction regarding venue.

Carpenter's venue claim is denied as to Count 3.

### 3. Conclusion

Carpenter's claims that counsel provided ineffective assistance due to his failure to file a pretrial motion to dismiss for improper venue, failure to raise a Rule 29 motion on venue, and failure to seek a specific jury instruction on venue, are denied as to Counts 1, 2 and 3.

### B. Sentencing

The Court enhanced Carpenter's base offense level U.S.S.G. § 2B1.1 due to the number of victims involved and the total amount of the loss. Sentencing counsel objected to these enhancements on the basis that Carpenter did not join the conspiracy until November 17, 2010. *See* Def. Sentencing Mem. (Doc. 390) at 2; Presentence Report (Doc. 420) at Addendum, Objections Two and Three. The sentencing court found as follows:

> The evidence as a whole must be considered for purposes of
> determining the propriety or correctness of the determination of

> numbers of victims. I am satisfied from the record as a whole that this man was clearly a member of a conspiracy, and the evidence and the verdict clearly support those determinations, and that he is accountable under 1B1.3(a)(1), Subdivision (B) for all of the acts of others that constitute relevant conduct.

Sentencing Tr. (Doc. 477) at 11:12-20. The Court reached the same ruling, on the same basis, as to the amount of the loss or restitution. *See id.* at 12:9-14; *see also* U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct); Presentence Report ¶¶ 44-45.

Carpenter alleges that appellate counsel provided ineffective assistance for failing to raise Carpenter's objections to these enhancements on appeal. *See* Mot. § 2255 at 4 ¶ 5B, 5 ¶ 5C; Mem. at 43. The United States asserts that any appeal would have been fruitless because the record supported the enhancements. *See* Answer at 6-10.

The guidelines define the scope of conduct relevant to calculation of the offense level. "Relevant conduct" includes:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> (i) within the scope of the jointly undertaken criminal activity,
>
> (ii) in furtherance of that criminal activity, and
>
> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in

preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a)(1)(B).

A defendant's relevant conduct "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. § 1B1.3 cmt. n.2, para. 8 (2012) (now n.3(B), para. 3). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Acts of co-conspirators before a defendant joins a conspiracy do not constitute "relevant conduct" for that defendant.

Carpenter's trial counsel did not point explicitly to the commentary when he claimed that Carpenter had not become involved in the conspiracy until November 17, 2010. The government points to Carpenter's statements to law enforcement on August 23, 2012, to support its claim that Carpenter's became involved earlier. Special David Burns of the FBI interviewed Carpenter on that date. Special Agent Burns testified at trial that Carpenter said he "had been working with Domestic Energy Solution [sic] and U.S. Oil and Gas for about a year-and-a-half." *See* Answer at 9 (referring to 3 Trial Tr. (Doc. 468) at 178:21-179:13). Special Agent Burns testified at the sentencing hearing, however, that Carpenter had told him during the interview that he had become involved with this scheme "one-and-a-half

to two years earlier." Sentencing Tr. (Doc. 477 at 20:15-20:22). The Court will not attempt to divine any distinction between Special Agent Burns's testimony at trial and at the sentencing hearing. The Court instead will use the objection raised by Carpenter's counsel at the sentencing hearing that Carpenter first joined the conspiracy on November 17, 2010, and thus could be held accountable for harm to victims since that date.

Carpenter's objection at the sentencing hearing shifted the burden to the government "to prove the facts to support these increases by a preponderance of the evidence." *United States v. Job*, 871 F.3d 852, 869 (9th Cir. 2017) (citing *United States v. Romero-Rendon*, 220 F.3d 1159, 1160 (9th Cir. 2000)). The government relied on the list of victims contained in the Presentence Report. Presentence Report (Doc. 420 at 24-28). Using the list of restitution payees and counting all loss incurred after November 17, 2010, regardless of whether money had been paid to U.S. Oil and Gas or Domestic Energy Solutions, Carpenter was responsible for losses and restitution in excess of $400,000.00. He still would qualify for a 14-level upward adjustment. U.S.S.G. § 2B1.1(b)(1)(H) (Nov. 1, 2012).

The Court also has reviewed the list of restitution payees to determine the number of victims hurt by Carpenter and his co-defendants after November 17, 2010. Presentence Report (Doc. 420 at 24-28). The Court's review indicates that

the actions of Carpenter and his co-defendants caused injuries to more than 50 victims after November 17, 2010. A "[v]ictim" means "any person who sustained any part of the actual loss." U.S.S.G. § 1B1.3 cmt. n.1, para. 18 (Nov. 1, 2012). The term "person" includes "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." *Id.*

The Court's review indicates that the list of restitution payees includes people who appear to be spouses. Presentence Report (Doc. 420 at 24-28). The Court has included each spouse as a separate victim as each "person" appears to have suffered a separate loss after November 17, 2010. The list of restitution payees also includes several people and entities with which they appear to have some association, such as a limited liability company or a trust. *Id.* The Court has included each person and each entity as a separate victim as it appears that each suffered a separate loss after November 17, 2010. The Court correctly applied the four-level upward adjustment for more than 50 victims. U.S.S.G. § 2B1.1(b)(2)(B).

Carpenter's § 2255 motion will be denied as to the sentence.

### III. Carpenter's "Addendum"

Carpenter filed an "addendum" to his reply on March 27, 2017. He alleges a new claim that is likely untimely. Regardless, the Court will address it on the merits.

Carpenter asserts that the Court "lost jurisdiction" because the magistrate

judge entered a not-guilty plea on his behalf at his arraignment. An assistant federal defender temporarily represented Campa. *See* Addendum (Doc. 659) at 2; Minutes (Doc. 77). The claim lacks merit. Carpenter states the Branom "immediately advised" him, "[D]o not say anything, I'm Mike Campa's attorney. I'm only here to stand in with you today." Addendum (Doc. 659) at 4 ¶ 3. In *Mickens v. Taylor*, the Supreme Court determined that a defendant claiming that counsel labored under a conflict of interest must show that his counsel's alleged conflict "actually affected the adequacy of [the defendant's] representation." 535 U.S. 162, 168 (2002) (describing the rule of *Cuyler v. Sullivan,* 446 U.S. 335 (1980)). Carpenter does not identify any right or even any advantage he lost as a result of Branom's brief participation, either at arraignment or at any other stage. This claim is denied.

## IV.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court has denied Carpenter's claims. Carpenter's complaints about counsel's performance at trial seem to rest on an inaccurate understanding of the law. No reasonable justification defense exists to excuse the fraud charges. *See* Order (Doc. 646) at 5-10. Carpenter's claim regarding a conflict with trial counsel simply restated his argument that counsel should have adopted the meritless defense Carpenter suggested. *See id.* at 13-14. As for Carpenter's new claim that he should have had conflict-free counsel at his arraignment, *see supra* at Part III, he does not claim counsel's conflict at arraignment "actually affected the adequacy" of his representation.

Reasonable jurists could disagree with the denial of these claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Carpenter's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 633, 636, 657, 659) is DENIED as to Counts 1, 2 and 3, and as to the sentence.

2.     A certificate of appealability is GRANTED as to the merit of Carpenter's ineffective assistance claims regarding venue and his sentence and DENIED as to all other issues. The clerk shall immediately process the appeal if Carpenter files a notice of appeal.

3.    The Clerk of Court shall ensure that all pending motions in this case

and in CV-16-77-GF-BMM are terminated and shall close the civil

file by entering judgment in favor of the United States and against

Carpenter.

DATED this 15th day of May, 2018.


Brian Morris
United States District Court Judge